UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAYSOUN ABUDAYYEH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 5802 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| ENVOY AIR, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Maysoun Abudayyeh, a former Passenger Service Agent employed by Defendant Envoy Air, Inc. ("Envoy"), brought this employment discrimination suit after she resigned from her position in September 2017. In her second amended complaint ("SAC"), Abudayyeh alleges discrimination and constructive discharge under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (Count I), and unlawful retaliation and interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Counts II and III). Envoy moves to dismiss Abudayyeh's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) due to preclusion under the Railway Labor Act ("RLA") and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). As an initial matter, the Court concludes that the RLA does not preclude Abudayyeh's claims because her claims are based on independent federal statutes, not a collective bargaining agreement. The Court further concludes that Abudayyeh may proceed on her ADA claim for any alleged adverse actions happening within 300 days of the filing of her charge with the Equal Employment Opportunity Commission ("EEOC"). She may also proceed

with her FMLA claims because she pleads sufficient facts suggesting that she suffers from a serious health condition within the meaning of the FMLA.

## BACKGROUND[1]

Abudayyeh worked as a Passenger Service Agent for Envoy, a regional commercial airline and wholly owned subsidiary of American Airlines Group, Inc., from July 2000 until she retired in September 2017, with a break between February and June 2017 arising from Envoy's termination and reinstatement of her employment. Throughout her employment, Abudayyeh performed a variety of flight-related duties for Envoy, such as ticketing, attending to passengers in boarding and exiting the aircraft, and related tasks. Towards the end of her employment, Abudayyeh began to suffer from a number of mental health issues that occasionally caused her to miss work. Between May 2016 and February 2017, Abudayyeh missed 11.5 days of work.

On October 14, 2016, Abudayyeh saw her physician, who treated her for depression, anxiety, severe fatigue, panic attacks, and poor concentration. She received treatment for the same issues on November 11 and November 16, 2016. At her November 16, 2016 visit, Abudayyeh's physician determined she was incapacitated and that her incapacitation would likely continue for three to four months.

Abudayyeh consequently applied for FMLA leave on December 7, 2016, which Envoy initially approved.[2] Between December 7, 2016 and February 13, 2017, Abudayyeh called

---

[1] The facts in the background section are taken from the SAC and the exhibits attached thereto, and are presumed true for the purpose of resolving the motion to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court also considers the additional materials submitted by Envoy when considering the motion to dismiss pursuant to Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

[2] Envoy used a third-party administrator, F & H Solutions Group ("FHSG"), to handle FMLA and other leave requests. The Court does not differentiate between FHSG and Envoy in this opinion.

Envoy's telephone sick line daily, as instructed, to report that she was on medical leave and unable to return to work. On both December 14 and 21, 2016, Abudayyeh's physician provided Envoy with a fitness for duty certification that stated, in part, that Abudayyeh's incapacitation would last between December 2, 2016 and February 2, 2017; that she would need medically necessary treatment once per month;[3] and that she was incapacitated for a single continuous period due to her medical condition.

Despite its initial approval of her FMLA leave, on January 3, 2017, Envoy reversed course and denied Abudayyeh's FMLA request, having concluded that she did not suffer from a serious health condition. On January 5, 2017, Envoy then requested that Abudayyeh submit a personal leave of absence ("PLOA") application justifying her leave of absence. On January 17, 2017, Envoy denied Abudayyeh's PLOA request and further informed her that if she took any unauthorized leave, her absences may subject her to disciplinary action. Envoy also converted her prior FMLA absences to unapproved absences. Abudayyeh then returned to work on January 19, 2017 and worked without any additional absences until February 10, 2017, when she saw her physician and obtained a return to work certification. On February 13, 2017, Envoy terminated Abudayyeh for excessive absenteeism.

Abudayyeh sought relief through the assistance of her union, engaging in grievance procedures in accordance with a negotiated "interim grievance procedure" letter of agreement (the "LOA") between the union and Envoy. Following the LOA's procedures, the parties reached a settlement agreement, with Envoy agreeing to reinstate Abudayyeh on June 29, 2017. Under the terms of the settlement agreement, Abudayyeh did not receive back pay for the time between her termination and reinstatement; her attendance points resumed at 7.0; and Envoy

---

[3] The December 21 certification added that Abudayyeh would need treatment for six months.

treated the time between her termination and reinstatement as a PLOA, adjusting her seniority, vacation, and sick accruals accordingly. Envoy also altered Abudayyeh's schedule upon reinstatement, switching her from a morning to an evening shift. After experiencing daily threats of retaliation, Abudayyeh retired in September 2017.

Abudayyeh filed her charges of discrimination with the EEOC on February 20, 2018.[4] She subsequently received her "right-to-sue" letter on June 3, 2019. She commenced this action on August 28, 2019.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Where the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

---

[4] Envoy treats Abudayyeh's EEOC charge as filed on February 9, 2018, the date on which she signed the charge. The charge bears a stamp indicating that the EEOC received the charge on February 20, 2018, which the Court uses as the filing date. *See* 29 U.S.C. § 1601.13(4)(ii)(A) ("[T]he charge is deemed to be filed with the Commission upon receipt of the document."); *Koch v. CGM Grp., Inc.*, No. TH 00-216-C M/H, 2001 WL 392523, at *7 (S.D. Ind. Apr. 3, 2001) ("A charge is not considered to be filed with the EEOC until the EEOC receives the charge and stamps it with the appropriate date.").

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.      Preclusion Under the Railway Labor Act**

Envoy first challenges this Court's jurisdiction to adjudicate any of Abudayyeh's post-termination claims. Envoy argues that these claims require the Court to interpret the LOA, which Envoy treats as a collective bargaining agreement ("CBA"), and the RLA thus precludes them. The RLA governs railroads and airlines and provides for the "prompt and orderly settlement" of labor disputes in these industries. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (citing 45 U.S.C. § 151a). The RLA requires parties to adjudicate their "so-called 'minor disputes'" through arbitration before an adjustment board established by a governing CBA. *Id.* (citation omitted). Minor disputes "gro[w] 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303 (1989) (citation omitted); *Carlson*, 758 F.3d at 832 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263, 265 (1994)).

The RLA, however, does not preclude independent claims, in other words, claims that cannot be "conclusively resolved" by interpreting a CBA. *Carlson*, 758 F.3d at 832 (citing

5

*Hawaiian Airlines*, 512 U.S. at 263, 265). "[P]urely factual questions" about an employer's conduct or motivation do not "require[ ] a court to interpret any term of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). Among other things, the RLA does not preclude claims involving "statutory protections against employment discrimination and retaliation." *Carlson*, 758 F.3d at 832 (the RLA does not preclude "claims based on rights with an independent basis").

Envoy contends that Abudayyeh bases her post-termination claims on either (1) events that occurred prior to the parties entering into a settlement agreement in accordance with the grievance procedures of the LOA; (2) the settlement agreement itself; or (3) events that occurred after but nevertheless stem from the same settlement agreement and grievance process. Thus, Envoy argues, Abudayyeh's claims all arise, in one form or another, out of the LOA. To that end, in order to adjudicate Abudayyeh's ADA and FMLA post-termination claims, Envoy argues that the Court will necessarily need to interpret the settlement agreement and delve into the grievance settlement process—a territory reserved for an arbitral board under the RLA. In response, Abudayyeh argues that the terms of her settlement agreement and her treatment by Envoy after her termination serve only to highlight Envoy's discriminatory actions, making her post-termination claims independent of the LOA.

Abudayyeh also argues that the LOA does not qualify as a CBA for purposes of the RLA, but the Court need not definitively decide that question. Even assuming that the LOA qualifies as a CBA, the RLA does not preclude her claims. Abudayyeh's claims are analogous to the claims the Seventh Circuit considered in *Carlson*, where the plaintiff alleged her employer discriminated against her by refusing to reinstate her to the position of substitute yardmaster. 758 F.3d at 824. The railway company argued that her claim could be "conclusively resolved by

6

an arbitral ruling that she was not qualified under the collective bargaining agreement to be a substitute yardmaster." *Id.* at 833. The Seventh Circuit disagreed, explaining that claims arising out of a CBA and claims asserting rights under federal law are not mutually exclusive. *Id*. ("[A] claim is not barred simply because 'the action challenged by the plaintiff is "arguably justified" by the terms of the CBA.'" (citations omitted)).

Like the plaintiff in *Carlson*, Abudayyeh asserts rights under two federal statutes—the ADA and FMLA—independent of a CBA. Abudayyeh does not quarrel with the interim grievance procedure itself, she simply points to a settlement agreement made pursuant to the grievance procedure as evidence of the discrimination she experienced. "Her claims thus depend on a 'factual inquiry into any retaliatory [or discriminatory] motive of the employer' rather than on an interpretation of the collective bargaining agreement." *Id*. (alteration in original) (quoting *Hawaiian Airlines*, 512 U.S. at 266); *see Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011) (the RLA did not preclude Title VII claims that the employer discriminatorily enforced a CBA policy because the claims did not "call the policy itself into dispute").

For this reason, Abudayyeh's claims can be distinguished from ones involving disputes over the *terms* of a CBA and settlement agreement entered into regarding those same terms. *See, e.g.*, *Bhd. of Maint. of Way Emps. v. Union Pac. R.R. Co.*, 358 F.3d 453, 455–56 (7th Cir. 2004). Because a dispute over the terms of a CBA amounts to a "minor dispute," the RLA requires arbitration of such a claim. *Id.* at 457; *see also Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 664 (7th Cir. 2001) (the RLA precluded the plaintiff's ADA claims because the "heart of the dispute" was "a disagreement over the interpretation of" a CBA's seniority provisions). As discussed above, however, like the plaintiff in *Carlson*, Abudayyeh asserts claims under separate federal statutes, independent of the CBA itself, and does not call the terms of the LOA or settlement

agreement into dispute. Her claims therefore fall within the "general rule that the RLA does not require arbitration of claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Carlson*, 758 F.3d at 833. As such, the RLA does not preclude Abudayyeh's post-termination claims, and the Court has jurisdiction over those claims.

## II. ADA Claim (Count I)

### A. Causation under the ADA

The ADA prohibits an employer from discriminating against or failing to accommodate "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state an ADA claim, Abudayyeh must allege: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) her disability caused the adverse job action. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016).

Envoy first argues that Abudayyeh has not properly pleaded the causation element of her ADA claim because she contends that both her disability and the exercise of her FMLA rights caused the alleged adverse actions. The Seventh Circuit has concluded that, "in the absence of a cross-reference to Title VII's mixed-motive liability language or comparable stand-alone language in the ADA itself, a plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). While Congress amended the ADA in 2008 to prohibit discrimination "on the basis of" a disability, the Seventh Circuit continues to apply the but for

8

causation standard it used under the pre-amendment language of the ADA, which prohibited discrimination "because of" an employee's disability. *See Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) ("Nearly 12 years later, it remains an open question in this circuit whether that change affects the 'but for' causation standard we apply in these cases." (citations omitted)); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, --- U.S. ----, 140 S. Ct. 1009, 1016 (2020) (the phrase "on the basis of" used in § 1981 is "strongly suggestive of a but-for causation standard"). Because neither side has asked this Court to proceed under a different standard in light of the 2008 amendments to the ADA, the Court uses the traditional but for standard.

Even under the but for standard, however, the parties disagree as to its application at the motion to dismiss stage. Envoy argues that Abudayyeh improperly pleaded "mixed motives" for Envoy's alleged adverse employment actions—that *both* impermissible discrimination under the ADA *and* impermissible FMLA interference and retaliation caused the adverse actions—and she therefore failed to adequately plead causation under the ADA. Abudayyeh, on the other hand, contends that an ADA claim may survive where multiple "but for" causes exist.

Envoy misconstrues the meaning of "mixed motives." A "mixed motives" case is one where the "employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 171 (2009). Here, Abudayyeh alleges that she suffered both disability and FMLA discrimination, not that Envoy had both a permissible and impermissible reason for the discrimination. *See Anderson v. Champion Home Builders, Inc.*, No. 1:19-CV-130, 2019 WL 6213067, at *5 (N.D. Ind. Nov. 20, 2019) ("Mixed motive cases are those in which a defendant employer had both *legal* reasons and *illegal* reasons for taking adverse action against an

9

employee."). Envoy has not identified, and the Court cannot find, any case that prohibits a plaintiff from proceeding on alternative theories of discrimination at the pleading stage. *See Alamo v. City of Chicago*, No. 12-cv-4327, 2018 WL 5830763, at *4 (N.D. Ill. Nov. 7, 2018). Indeed, Envoy's argument runs contrary to Federal Rule of Civil Procedure 8, which allows for alternative pleading. Fed. R. Civ. P. 8(a); *Alamo*, 2018 WL 5830763, at *4 & n.1 ("Discrimination cases routinely assert multiple parallel theories [of] illegal . . . discrimination[.]"). Envoy cites to *Milsap v. City of Chicago*, but in that case, the plaintiff had alleged both a permissible and an impermissible reason for his termination. No. 16-cv-4202, 2018 WL 488270, at *4, 6 (N.D. Ill. Jan. 19, 2018) (the plaintiff could not proceed with an ADA claim where he also alleged that his termination resulted from lying to investigators). And although the opinion Envoy cites from *Dietrich v. C.H. Robinson Worldwide, Inc.* indicates that a plaintiff's disability discrimination claim failed the causation standard because she alleged that her discharge occurred because of her gender and disability, No. 18 C 4871, 2018 WL 6399199, at *3 (N.D. Ill. Dec. 6, 2018), that same court reconsidered its conclusion in a subsequent opinion and found that, at the pleading stage, a plaintiff may pursue an ADA discrimination claim alongside a gender discrimination claim, No. 18 C 4871, 2019 WL 1044406, at *3 (N.D. Ill. Mar. 5, 2019). Therefore, at this stage, the Court finds that Abudayyeh may proceed on her ADA claim despite also alleging that Envoy discriminated against her because of her exercise of her FMLA rights.

     **B.    Timeliness of ADA Claims**

Next, Envoy argues that certain parts of Abudayyeh's ADA claim are time-barred. The ADA requires employees to file a charge of discrimination within 300 days of the occurrence of the alleged unlawful employment practice. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5; *Stepney*

*v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). A plaintiff cannot pursue discrete discriminatory acts that are not brought in a charge within the statutory limitations period, regardless of whether they are related to acts in a timely charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("If a plaintiff does not file a charge concerning a discrete act within the 300-day window, her claim is time-barred and she may not recover.").

Envoy does not seek to dismiss *all* of Abudayyeh's ADA claim, just that based on adverse actions that allegedly occurred more than 300 days before she submitted her EEOC charge, in other words, before April 26, 2017. This would include Abudayyeh's termination on February 13, 2017. *See Morgan*, 536 U.S. at 114 (termination is a discrete act). In response, Abudayyeh invokes the continuing violation doctrine, arguing that, although she suffered distinct discrimination with respect to her termination and reinstatement, the Court should find these adverse actions related to make the claim concerning her termination timely. But by acknowledging the distinct nature of the adverse actions, Abudayyeh undermines any argument that they form one continuing violation. *See Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) (the continuing violation doctrine "concerns a claim based on an ongoing policy rather than discrete acts of discrimination"). Accordingly, to the extent Abudayyeh's ADA claim concerns discrete acts that occurred prior to April 26, 2017—including her termination on February 13, 2017—the Court dismisses the claim as time-barred. But Abudayyeh may still use the time-barred instances of alleged discrimination as background evidence in support of the timely-filed portions of her ADA claim. *Morgan*, 536 U.S. at 113.

11

C.      **Constructive Discharge**

Envoy also argues that Abudayyeh has not sufficiently alleged that Envoy constructively discharged her for purposes of both her ADA and FMLA claims. Constructive discharge occurs "when, from the standpoint of a reasonable employee, the working conditions become unbearable." *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015); *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). This can occur where "*the employer's actions* communicate to the employee that she immediately and unavoidably will be terminated." *Wright*, 798 F.3d at 528–29. The question of whether a constructive discharge occurred is fact-intensive, with dismissal inappropriate "where the situation is identified and unlawful motivation alleged." *Carlson*, 758 F.3d at 830.

Abudayyeh alleges in her SAC that Envoy engaged in ongoing, even daily, threats of retaliation that placed her in fear of termination. She also complains that Envoy took actions to make her work environment intolerable, altering her work schedule after years of working the same shift. Although a close question, drawing all inferences in Abudayyeh's favor, as the Court must do at this stage, Abudayyeh has sufficiently pleaded facts to suggest that Envoy constructively discharged her. *See Carlson*, 758 F.3d at 830 ("The conditions Carlson described in her complaint may not ultimately qualify as intolerable, but we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required."); *Brownlee v. Cath. Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *4–6 (N.D. Ill. Feb. 28, 2017) (constructive discharge allegations provided the defendant with sufficient notice to allow them to proceed to discovery). *But see Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1065 (N.D. Ill. 2018) ("Considering the totality of the circumstances that Plaintiff describes, and accepting all of her allegations as true, Plaintiff's

12

experience at STARS simply does not represent anything sufficiently egregious to support a constructive discharge claim (or that would satisfy even the less-demanding standard for a hostile work environment claim)."). Envoy may reassert its argument that Abudayyeh cannot prove constructive discharge after the parties have engaged in discovery.

### III.     FMLA Claims (Counts II and III)

The FMLA entitles an employee to twelve weeks of leave per twelve-month period for a serious health condition that renders her unable to perform her job. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (citing 29 U.S.C. § 2612(a)(1)(D)). An employer may not interfere with or deny an employee's exercise of her right to this leave. 29 U.S.C. § 2615(a)(1). To state an FMLA interference claim, Abudayyeh must allege that (1) she was eligible for FMLA protection, (2) the FMLA covers Envoy, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take FMLA leave, and (5) Envoy denied her FMLA benefits to which she was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). With respect to FMLA retaliation, Abudayyeh must allege that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018).

Envoy seeks dismissal of Abudayyeh's FMLA interference and retaliation claims, arguing that Abudayyeh did not have a "serious health condition" within the meaning of the FMLA.[5] A serious health condition under the FMLA means "an illness, injury, impairment, or physical or mental condition that involves--(A) inpatient care in a hospital, hospice, or residential

---

[5] In its reply, Envoy also argues that the Court should dismiss the FMLA claims because Abudayyeh's response suggests that Envoy acted because she had a serious health condition, not because she exercised her FMLA rights. Because Envoy only raises this argument in its reply, the Court need not address it. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

13

medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Envoy does not take issue with whether depression and anxiety may amount to serious health conditions, instead arguing that Abudayyeh cannot meet the technical requirements of the legal definition. *See, e.g.*, *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590–91 (7th Cir. 2008) ("She argues that during this time period she suffered from anxiety, depression, and various other minor ailments, but does not adequately apply these afflictions to the legal standard."); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) (depression may qualify as a "serious health condition).

Abudayyeh maintains that she suffered from a chronic serious health condition, as defined in 29 C.F.R. § 825.115(c).[6] Under the FMLA, a chronic serious health condition is one that:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider . . . ;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). Envoy argues that Abudayyeh cannot meet the second element because her doctor only expected her condition to last between three and four months. As Envoy acknowledges, however, the Seventh Circuit has not established a bright-line rule as to what qualifies as an "extended period of time." While Envoy cites to various out of circuit cases to suggest that a three- to four-month period is insufficient, the Seventh Circuit has on at least one occasion determined that treatment for over four months suffices. *See Burnett v. LFW. Inc.*, 472

---

[6] Because Abudayyeh focuses on a chronic serious health condition, the Court need not address Envoy's arguments concerning whether she has pleaded a serious health condition under 29 C.F.R. § 825.115(a).

14

F.3d 471, 478 (7th Cir. 2006); *Sahlhoff v. Gurley-Leep Auto. Mgmt. Corp.*, No. 3:14-cv-1790 RLM-MGG, 2016 WL 5724440, at *2 (N.D. Ind. Sept. 29, 2016) ("Approximately four months is enough for an 'extended period.'"). The SAC alleges Abudayyeh began treatment for depression and anxiety at the latest in October 2016. Her doctor indicated on the FMLA certification forms that her incapacitation began in November with a probable duration of three to four months and the need for at least six months of treatment. Following *Burnett*, these allegations suffice to suggest a chronic serious health condition under the FMLA at the pleading stage. The parties may flesh out these allegations in discovery.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Envoy's motion to dismiss [26]. The Court dismisses the ADA claim (Count I) to the extent it encompasses adverse actions occurring before April 26, 2017.

Dated: September 30, 2020

                                                                          _____
                                                                          SARA L. ELLIS
                                                                          United States District Judge